## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

### PACER Cover Sheet
### for Electronically Filed Documents

Any data shown here are current as of  06/10/06   . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:**      Pilar Mercedes Jimenez v. Wells Fargo Bank, N.A.

**Case Number:**      05-01150

| Document Information |
|---|

**Description:**      Memorandum Opinion re: [7-1] Motion For Summary Judgment by Wells Fargo Bank N.A., and [10-1] Cross Motion For Summary Judgment by Pilar Mercedes Jimenez .

Received on:      2005-12-21 14:30:51.000

**Date Filed:**      2005-12-21 00:00:00.000

**Date Entered On Docket:**      2005-12-21 00:00:00.000

| Filer Information |
|---|

**Submitted By:**      Ellen Snyder

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date.  To confirm that nothing has changed since then, review the docket.**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:

      **Pilar Mercedes Jimenez,**
          **Debtor.**                            **No. 7-05-15473 MA**

**Pilar Mercedes Jimenez,**
      **Plaintiff,**

**v.**                                       **Adv. No. 05-1150 M**

**Wells Fargo Bank, N.A.,**
      **Defendant.**

## MEMORANDUM OPINION

THIS MATTER is before the Court on cross motions for summary judgment on the Complaint for Turnover of Property and Damages (the "Complaint") filed on July 11, 2005 by the Debtor, Pilar Mercedes Jimenez (the "Plaintiff"). Defendant ("Wells Fargo") filed a Motion for Summary Judgment ("Wells Fargo's Motion") on July 14, 2005. Plaintiff filed a Response and Cross Motion for Summary Judgment ("Plaintiff's Response and Cross Motion") on July 23, 2005 to which Wells Fargo filed a Response to the Cross Motion and a Reply to Plaintiff's Response ("Wells Fargo's Response and Reply") on August 9, 2005. Wells Fargo filed an Addendum to the Response and Reply on August 30, 2005 ("Wells Fargo's Addendum"). After considering the pleadings, motions, arguments of counsel and the applicable law, the Court will grant the Plaintiff's Cross Motion as to liability for a willful violation of the stay and will deny Wells Fargo's Motion as to liability for a willful violation of the stay. The Court will set an evidentiary hearing to determine damages, including punitive damages, if warranted.

1

The undisputed facts are as follows:

1. The Plaintiff filed this Chapter 7 bankruptcy proceeding on July 5, 2005.

2. On the date of the filing, Plaintiff had a checking account and a savings account at Wells Fargo. At that time, the balance in the checking account was $5,173.33, and the balance in the savings account was $649.18.

3. Plaintiff listed the checking account on her original bankruptcy schedules claiming $4,000.00 of the balance as exempt property under to 11 U.S.C. § 522(d)(5). Schedules B and C, Docket No. 1. The savings account was not listed on the original Schedule B.

4. On July 14, 2005, Plaintiff amended Schedules B and C listing both accounts and claiming the total amount deposited in both accounts exempt.

5. Wells Fargo is not a creditor of the Plaintiff.

6. On July 8, 2005, three days after the bankruptcy filing, Wells Fargo received electronic notification of the filing of Plaintiff's bankruptcy case. Wells Fargo's Motion Exhibit 1; Affidavit of Luana Tafoya, Operations Manager for the Deposits Bankruptcy Department Wells Fargo Bank, N.A. ¶ 4 ("First Tafoya Affidavit"). On the same day Wells Fargo placed an administrative freeze on the balances in both the checking account and the savings account. First Tafoya Affidavit ¶ 4.

7. Because Wells Fargo is not a creditor or other party listed on the mailing matrix, it did not receive notice of Plaintiff's bankruptcy filing from the Court.

8. Wells Fargo placed the following notation on Plaintiff's accounts:

CH7 BANKRUPTCY CS#05-15473
PENDING TTEE INSTRUCTION
CALL DEPOSITS BKCY DEPT.503/721-5300-BKRE

2

First Tafoya Affidavit ¶ 4.

     9. Wells Fargo sent letters dated July 8, 2005, one regarding each account, to the Chapter 7

Trustee stating in relevant part:

> Wells Fargo . . . has received notification of Pilar Mercedes Jimenez's bankruptcy petition.
> Sections 541 and 542 of the Bankruptcy Code require Wells Fargo to act in good faith
> to preserve the status quo and to follow your direction with regard to property of the estate.
> When Wells Fargo received notice, it checked the value of the debtor(s)'s account, . . . on the
> filing date and the notice date . . . . The Estate Funds are now in bankruptcy status, which
> means they are payable only to or upon your order.
> The Estate Funds will remain in bankruptcy status until the earlier of receipt of direction from
> you . . . or September 12, 2005, which is 31 days after the scheduled First Meeting of
> Creditors. If you wish Wells Fargo to take any other action with the Estate Funds, please
> check the appropriate boxes . . .

     Wells Fargo offered the Trustee several possible instructions: 1) release the funds to Plaintiff; 2)

turnover of the funds to the Trustee; 3) take no action because the funds are not part of the bankruptcy

estate; or 4) take an other specific actions as indicated by the Trustee. Wells Fargo's Motion, Exhibits

A and A-1.

     10. Wells Fargo sent two letters, one regarding each account, to Plaintiff's attorney stating in

relevant part the following:

> Wells Fargo . . . has received notification of your client(s)'s, Pilar Mercedes Jimenez,
> bankruptcy filing. When Wells Fargo received notice, it checked the value of your client(s)'s
> account, . . . $5,108.56 became property of the bankruptcy estate ("Estate Funds"). The
> Estate Funds are now in bankruptcy status, which means they are no longer available to your
> client(s).

> Wells Fargo is required by operation of Sections 541 and 542 of the Bankruptcy Code to act
> in good faith to preserve the status quo and so must follow the trustee's direction with regard to
> the Estate Funds. Accordingly, Wells Fargo has asked for instruction from the trustee. . . .
> [t]he trustee has 30 days from the first meeting of creditors to object to a claim of exemption for
> the Estate Funds and ownership of claimed exempt property remains with the bankruptcy estate
> until such time passes or the trustee directs otherwise.

3

Wells Fargo is prepared to immediately follow the trustee's direction regarding the Estate Funds and you may be able to expedite the trustee's decision. Alternatively, please provide Wells Fargo with a copy of your client(s)'s claimed exemptions for funds that should re-vest in your client(s) at the end of the objection period. As noted above, a similar request for instruction has been sent to the Trustee.

Wells Fargo's Motion Exhibit B.

11. Plaintiff's attorney faxed four letters between July 8, 2005 and July 11, 2005 to various employees and managers of the Wells Fargo Bankruptcy Departments. The first letter stated that Plaintiff was claiming the funds in the accounts exempt and demanding turnover of the funds. Plaintiff's Response and Cross Motion Exhibit 1. A copy of Plaintiff's original Schedule C was attached to the letter. The other letters, sent to an employee, the general counsel and a district manager, respectively, informed Wells Fargo that Plaintiff had filed this adversary proceeding and an emergency motion for access to the funds. Plaintiff's Response and Cross Motion Exhibits 2-4.

12. For a number of years, Wells Fargo has placed administrative freezes on account funds known to be part of a Chapter 7 bankruptcy proceeding. Wells Fargo states that the freezes are necessary "to avoid liability under the United States Bankruptcy Code for knowingly transferring estate funds after a petition for bankruptcy relief has been filed." First Tafoya Affidavit ¶2. Wells Fargo imposes administrative holds on funds held in deposit accounts regardless of whether Wells Fargo is a creditor in the bankruptcy. Exhibit 3 to Wells Fargo's Response and Reply, Affidavit of Michael Slade, General Counsel of Wells Fargo & Company, Wells Fargo's parent company ¶ 2 ("Slade Affidavit").

13. Wells Fargo states that the "U.S. Court's CM/ECF system, with its '24/7' provision of

4

records, filing and instant electronic noticing, has greatly accelerated Wells Fargo's receipt of actual notice of Chapter 7 bankruptcies . . ." Slade Affidavit ¶ 4.  New Mexico bankruptcy records are available on the internet via its electronic system known as ACE (Advanced Court Engineering) to users with an assigned ACE account.  New Mexico does not currently use the CM/ECF system used in other districts.

14.  On July 14, 2005, the Chapter 7 Trustee, Yvette Gonzales (the "Trustee"), authorized Wells Fargo to release $4,000.00 of the funds to Plaintiff.[1]  Exhibit 1 to Wells Fargo's Response and Reply, Affidavit of Yvette Gonzales ¶ 3 ("Gonzales Affidavit").  Wells Fargo allowed Plaintiff access to the released funds after receiving instructions from the Trustee.  First Tafoya Affidavit ¶ 3.

## Discussion

The Complaint requests turnover of all of the funds subject to the administrative freeze plus damages under the following causes of action: 1) Violation of the automatic stay in bankruptcy under 11 U.S.C. § 362(a)(3)[2]; 2) Intentional interference with Plaintiff's contractual relations by refusing to honor a check written by Plaintiff; and 3) Conversion of Plaintiff's property.  Plaintiff seeks monetary damages for the willful violation of the stay under § 362(h); for the costs and late payment fees resulting from a dishonored check; for profits earned by Wells Fargo on the funds during the time the administrative freeze was in effect; and for Plaintiff's costs and attorney's fees incurred in connection with this

---

[1] In response to an emergency motion for turnover, Wells Fargo released this amount after receiving approval from the Trustee.

[2] This section provides that the filing of bankruptcy petition "operates as a stay, applicable to all entities, of . . .(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . " 11 U.S.C. § 362(a)(3).

adversary proceeding.

## Preliminary Matters

### Dismissal of Claim for Turnover.

In the Complaint Plaintiff alleges that Wells Fargo's actions violated 11 U.S.C. § 543 and requests turnover of the funds by Wells Fargo. Section 543 requires a custodian to "deliver to the trustee any property of the debtor . . ." 11 U.S.C. § 543 (b)(1). A "custodian" is a receiver, trustee, or agent charged with administration of the debtor's property for the benefit of creditors. *See*, 11 U.S.C. § 101(11). However, in Plaintiff's Response and Cross Motion, Plaintiff argues that Wells Fargo is not a custodian, and instead, is liable for turnover of the funds under § 542. Wells Fargo argues that the Complaint fails to state a claim for turnover under § 542 because the Complaint only refers to § 543. Because the Complaint does not clearly state under which provision Plaintiff is asserting a claim for turnover, the Court will dismiss the turnover claim without prejudice. Plaintiff may file an amended complaint within 10 days of the date of entry of this opinion and clarify under which provision, if any, she seeks turnover of the funds.[3]  If within this time period, an amended complaint is not filed, the Court will dismiss the claim for turnover.      **Joinder of the Trustee**.

Wells Fargo argues that if the Plaintiff seeks turnover of the funds, the Trustee must be joined as a party to this action because she is a necessary party under 7019, Fed. R. Bankr. P. The Trustee has filed a Report of No Distribution and Abandonment of Assets indicating that she has no interest in the

---

[3] It is unclear from the pleadings whether Plaintiff has received all of the funds that were held in her accounts as of the petition date, and therefore, whether turnover of the remainder of the funds is necessary.

6

claims in this proceeding. Docket No. 9, Bankruptcy Case No. 7-05-15473. In view of the abandonment of this claim to Plaintiff, the argument that the Trustee must be joined as a necessary party has become moot. Therefore, the Court need not address this argument.

**Plaintiff's Standing**.

Plaintiff claims that Wells Fargo violated the stay provision in 11 U.S.C. § 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . " 11 U.S.C. § 362(a)(3). Wells Fargo argues that Plaintiff lacks standing to enforce this provision under the circumstances presented here. The filing of a bankruptcy creates an estate comprised of "[a]ll legal and equitable interests of the debtor in property as of the commencement of the case[,]" which includes a Chapter 7 debtor's funds held in a checking or savings account. 11 U.S.C. § 541(a)(1); *Sousa v. Bank of Newport*, 170 B.R. 492, 494 (Bankr. D. R.I. 1994). Wells Fargo argues that when Plaintiff filed her Chapter 7 bankruptcy petition, Plaintiff's account funds[4] became "property of the estate," Plaintiff was divested of ownership of the funds, and the account funds became exclusively "owned" by the Trustee. Consequently, Plaintiff lacked standing at the time of the administrative freeze to pursue Wells Fargo for denial of access to funds because only the Trustee as "owner" may assert claims against Wells Fargo for any actions with respect to these funds during the time period that the funds belonged to the bankruptcy estate. Wells Fargo relies on *In re Laux,* 181 B.R. 60, 61 (Bankr. S.D. Ill. 1995), which held that the Chapter 7 debtor had no standing to assert a violation of stay regarding account funds frozen immediately after

_____

[4] For purposes of this opinion, "account funds" includes the balance of funds in both Plaintiff's checking and savings accounts.

Case 05-01150-m    Doc 16    Filed 12/21/05    Entered 12/21/05 16:23:00 Page 8 of 23

filing reasoning that only the Trustee, as owner, has authority to bring an action as to estate funds.

Wells Fargo asserts that after the period for filing objections expires, which is 30 days after the date of

the first creditors meeting, Plaintiff becomes re-vested with ownership of the funds. *Id.* At that time, if

Wells Fargo or any other entity attempts to possess or control the account funds, Plaintiff may pursue

claims for violation of the stay as to the funds under § 362(a)(3). *See also In re Calvin,* 329 B.R.

589, 601 (Bankr. S.D. Tex. 2005)(stating that debtor acquires standing to assert stay violation as to

account funds when title revests in the debtor which is when property is either "properly claimed and

allowed as exempt, or abandoned by the trustee.").

 The *Calvin* case involved a situation like this one. In *Calvin* the debtor also maintained a bank

account with Wells Fargo. Three days after the bankruptcy filing, Wells Fargo placed an administrative

freeze on the debtors' account containing a balance of over $8,000.00. *Id.* at 592.[5] The debtors, who

had claimed the funds exempt, moved for a finding of contempt against Wells Fargo for violation of the

stay. The court ruled that the debtors lacked standing stating,

> the funds in the account constituted property of the estate during the actions about which the [debtors'] Motion complains. . . . Because these funds belonged to the estate, any cause of action for improper handling of the funds belonged to the Trustee, . . . The Debtors therefore have no standing to seek any relief from the Bank for its freezing of the account.

*Id.* at 601. The court also concluded that the debtors had no compensable injury because at the time

the bank froze the funds, "they did not belong to the Debtors despite their claiming the funds as exempt

in Schedule C." *Id.* at 601.

_____

 [5] The court found that Wells Fargo had a policy of ascertaining whether any of its account holders had filed bankruptcy and if so, freezing accounts with balances of $5,000.00 and above. *Id.* at 592.

Under the Code, Plaintiff's account balances became property of the estate; however, that does not mean that Plaintiff has no right to assert that the stay protects this property. The creation of a bankruptcy estate does not extinguish a Chapter 7 debtor's property rights as illustrated in the provisions recognizing a debtor's right to exempt or remove property from the estate. *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005)(stating that exemption "is an interest of the debtor carved out of the bankruptcy estate for the benefit of the debtor and thereby shielded from creditors' claims."). Exemptions provide debtors with assets to aid in post-bankruptcy rehabilitation. *Id.* Plaintiff's exemption is presumed valid unless a party in interest objects. Rule 4003 (c). Section 522(b) states,

> Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1or, in the alternative, paragraph (2) of this subsection.

11 U.S.C. § 522(b). "Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l).

When Wells Fargo froze the accounts, Plaintiff had exercised her right to exempt the account funds; therefore, Plaintiff had a direct economic interest in the funds, which was adversely affected by Wells Fargo's administrative freeze. *See In re Moreira*, 173 B.R. 965 (Bankr. D. Mass. 1994). In *Moreira* a credit union that placed a freeze on a Chapter 7 debtor's account to protect its setoff right and moved for relief from stay argued that the debtor had no standing to challenge the setoff against funds in the bank account because only property of the estate was effected by the credit union's actions. The court rejected this argument. "Property of the estate is certainly implicated here. But the Debtor has the right to claim exemptions 'from property of the estate.'" *Id.* at 973. The court held that

9

the exemption claim was enough to confer standing. *Id.*[6]

Moreover, as between the debtor and the trustee, the debtor is the most motivated to protect estate property to which the debtor has an exemption claim[7], and the debtor should not be denied the protection that the stay affords under the broad language of § 362(a)(3). Wells Fargo's argument confuses rights to use property with rights to enforce the stay as to the property. The stay language of § 362(a)(3) focuses on protection of property and does not expressly limit its enforcement. The limitation proposed by Wells Fargo is contrary to the purpose of the automatic stay, to protect debtors. *Patterson v. B.F. Goodrich Employees Federal Credit Union (In re Patterson)*, 967 F.2d 505, 512 n.9 (11th Cir. 1992)(commenting on § 362(a)(3), "Congress deliberately has written the statute to give debtors 'breathing room' after filing their petition."). Wells Fargo would have this Court assign a time period within which either the debtor or the Chapter 7 trustee could pursue claims under § 362(a)(3). The Trustee could bring an action for stay violation regarding the account funds before the expiration of the period for objections to exemptions, and Plaintiff could bring an action for stay violation regarding the account funds after the expiration of the period for objections to exemptions.

---

[6] *Cf In re Wright,* 156 B.R. 549, 554 (Bankr. N.D. Ill. 1992)(noting in dicta that standing may be conferred upon a Chapter 7 debtor to assert a stay violation as to property claimed exempt and may have standing to as to non-exempt estate property because "[a]n injury to a debtor's bankruptcy estate also injures the debtor to the extent that the injury impedes the administration of the debtor's bankruptcy estate or interferes with the debtor's fresh start in bankruptcy.").

[7] The Code recognizes this concept in its provisions giving debtors the right to recover property from third parties that would be exempt, if the trustee could have recovered the property. *See,* 11 U.S.C. § 522(h)("The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if– (1) such transfer is avoidable by the trustee . . . .").

10

The deadline for filing objections to exemptions is 30 days after the creditors meeting;,[8] consequently, under Wells Fargo's view, the debtor could lose access to account funds and the protection of the stay with respect to those funds for a significant period of time.[9] This Court sees no reason to apply these Code provisions in a way that significantly reduces the protection afforded to debtors, which are available for all other types of estate property. Therefore, the Court concludes that Plaintiff's claimed exemption in the funds is a sufficient justiciable interest to assert stay protection. *Cf. Matter of Schwartz*, 54 B.R. 321, 325 (Bankr. W.D.Wis. 1985)(recognizing that Chapter 7 debtor, who has claimed certain property exempt, has standing to bring claim under § 362(h), as well as under avoidance provisions of § 522, because he alleges financial injury to himself as a result of a violation of the automatic stay).

This Court concludes that Plaintiff has standing to assert her claims against Wells Fargo based on the denial of access to these funds that she claimed exempt. Plaintiff has alleged an injury to that interest, lack of access to funds necessary to cover living expenses, which was allegedly caused by Wells Fargo and which will be redressed by the requested relief. *In re Sumpter*, 171 B.R. 835, 844 (Bankr. N.D. Ill. 1994)(citing, *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Thus, Plaintiff has standing to assert a stay violation based on Wells Fargo's administrative freeze of the account funds.

### Summary Judgment Standard.

Summary judgment is governed by Rule 56, Fed.R.Civ.P., which is made applicable to

---

[8] Rule 4003(b), Fed. R. Bankr. P.

[9] In the letter to the Trustee, Wells Fargo states that the account funds were to remain in "bankruptcy status" [frozen] until as late as September 12, 2005, which is 31 days after the first scheduled meeting of creditors. Motion Exhibit A-1.

11

adversary proceedings by Rule 7056, Fed.R.Bankr.P. Rule 56 provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law. *Id.* With regard to cross motions for summary judgment, even if one of the motions is denied, the other motion must independently satisfy the requirements of Rule 56. *In re Harris*, 209 B.R. 990, 998 (10th Cir. BAP 1997).

### Stay Violation or Status Quo?

In her Cross Motion, Plaintiff asserts that as a matter of law Wells Fargo violated § 362(a)(3) when it placed an administrative freeze of Plaintiff's account funds. Plaintiff contends that Wells Fargo willfully violated the stay because it acted intentionally with actual knowledge of the bankruptcy. *See In re Brian Johnson Motors Co., Inc.,* 180 B.R. 104, 109 (Bankr. D. S.C. 1995) (finding that bank's intentional imposition of administrative freeze on account to assert setoff right with actual knowledge of bankruptcy filing was willful violation of stay and awarding attorney's fees and costs to recover funds for estate). It is undisputed that Wells Fargo had actual knowledge at the time it imposed the freeze on Plaintiff's accounts; therefore, if the freeze is held to be a violation of the stay, Wells Fargo will be liable for a willful violation of the stay. 11 U.S.C. § 362(h).

On the undisputed facts, Wells Fargo and Plaintiff present a legal issue not yet addressed by the Tenth Circuit: does an administrative freeze of an account by a depository bank, without a right of setoff, constitute an inappropriate exercise of control over property of the estate in violation of § 362(a)(3) or is it a benign maintenance of the status quo in aid of the bankruptcy system?

In its Motion, Wells Fargo argues that the administrative freeze does not violate § 362(a)(3)

12

because it was not asserting a claim of setoff but was maintaining the status quo until a determination that the funds were either property of the estate subject to administration by the Trustee or were exempt property. Wells Fargo argues that courts have found administrative freezes violate the stay only in cases where banks froze accounts to claim a right of setoff. *See e.g. In re Orr,* 234 B.R. 249, 255 (Bankr. N.D. N.Y. 1999)(two month long administrative freeze by bank with right of setoff was more than temporary refusal to pay a debt and, therefore, violated the stay under § 362(a)(7)); *In re Cullen*, 329 B.R. 52, 58 (Bankr. N.D. Iowa 2005)(creditor-bank violated stay because was found to have intended an indefinite hold on funds subject to offset).

The Supreme Court has held that an administrative freeze of account funds by a depository bank for the purpose of protecting a right of setoff does not violate § 362(a)(7)[10] if it is temporary, the setoff is valid, and the depository bank immediately seeks relief from the stay. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). The Supreme Court recognized that it was deciding a narrow issue: "The principal question for decision is whether [the bank's] refusal to pay its debt to [debtor] upon the latter's demand constituted an exercise of the setoff right and hence violated the stay. . . . All that concerns us here is whether the refusal *was a setoff*." *Id.* at 19 (emphasis in original). However, in this case Wells Fargo is not a creditor with a claim of setoff; thus, the *Strumpf* holding is not directly applicable to this case. Plaintiff is asserting a violation of § 362(a)(3) not a violation of § 362(a)(7). Section 362(a)(3) was not at issue in *Strumpf*.

---

[10] This section provides that a bankruptcy petition stays "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor. . . ." 11 U.S.C. § 362(a)(7).

13

*See id.* at 18 (stating, "[w]hether the temporary refusal [freeze] was otherwise wrongful is a separate matter . . .").

Wells Fargo argues that although this case factually differs from *Strumpf,* the Supreme Court's characterization of a bank account should be applied to this case to hold that the freeze did not violate § 362(a)(3) because the funds in the bank account were not "property of the estate." In *Strumpf* the Court discussed § 362(a)(3) when the Court addressed an argument of the respondent-debtor that even if an administrative hold on a bank account was not *per se* setoff, the hold nevertheless violated § 362(a)(3). *Id.* at 21. The Court stated that the respondent-debtor was operating from a false premise in making this argument.

> Respondent's reliance on . . . [§ 362(a)(3)] rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, . . .and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Strumpf*, 516 U.S. at 21 (citations omitted). The Supreme Court continued, "[i]n any event, we will not give § 362(a)(3) . . . an interpretation that would proscribe what § 542(b)'s 'except[ion]' and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt." *Id.* The Supreme Court's characterization of bank accounts as promises to pay and not property of the estate was not necessary to its decision. The Court's analysis was by its own admission, limited to characterizing a freeze as a

14

setoff, which violated § 362(a)(7). As such, this statement was dicta.[11]  *Id.* at 19 (stating, "[a]ll that concerns us here is whether the refusal [freeze] *was a setoff*."). Because the Supreme Court's statements that account funds are not property of the estate, were dicta, this Court is not bound to hold that a freeze of an account is not a violation of the stay under § 362(a)(3) because a bank account is not property of the estate. Other courts agree. The court in *In re Buchferer*, 216 B.R. 332, 341 (Bankr. E.D. N.Y. 1997) characterized *Strumpf* as a "truncated opinion" that resolved a conflict among the circuit courts and the conflict between the debtors bar and the lenders' bar concerning whether freezes of accounts protect valid rights of setoff is a violation of the stay. *See In re Harris*, 260 B.R. 753, 754 (Bankr. D. Md. 2001)(recognizing *Strumpf* as authority for violations of stay by banks with setoff rights, but determining that account funds are property of the estate); *In re Holden*, 236 B.R. 156, 163 (Bankr. D. Vt. 1999)(stating that the holding in *Strumpf* should be construed narrowly, "[E]xemptions from the stay are strictly construed. The logic of the foregoing compels a narrow reading of *Strumpf*. In addition, the language of the decision itself dictates that its holding is limited to the so called 'bankers dilemma' of preserving a creditor's setoff rights."); *In re Quality Health Care*, 215 B.R. 543, 579 (Bankr. N.D. Ind. 1997)(stating that Justice Scalia feared the effect of Section 362(a)(3)--with its breathtaking admonition against "control" over property of the estate in making the distinction between debts owed to the debtor in a bank account and tangible property held by the bank.); *cf In re Tarbuck*, 318 B.R. 78, 79 (Bankr. W.D. Pa. 2004)(rejecting the bank's argument that

---

[11] "Dictum is defined as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case." *In re Hoskins*, 262 B.R. 693, 704 (Bankr. E.D. Mich. 2001)(quoting Black's Law Dictionary (7th ed.1999) (defining "obiter dictum").

15

under *Strumpf*, debtor's checking account funds are not property of the estate and stating, "the mere deposit of money in a bank does not amount to a transfer of property to the bank . . . [but] an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it is created. . . . . a transfer of the depositor's property has not occurred because of the obligation of the bank to pay checks drawn on the deposit.).

This case presents a separate issue: whether a depository bank, without a right of setoff, can freeze funds in a Chapter 7 debtor's bank account until either the bank receives instruction from the trustee or the funds are abandoned by the trustee or the period for objections to exemptions has passed. A checking or savings account is an intangible right to payment, it is nevertheless property of the estate protected by the stay. *Sousa*, 170 B.R. at 494; *Tarbuck*, 318 B.R. at 80. Moreover, a creditor must serve the debtor and debtor's counsel with any motion to lift or modify the stay recognizing the debtor's rights with respect to all property of the estate and an attempt to alter the stay as to the property. *See* Rules 4001(a)(1), 9014 and 7004(b)(9), Fed. R. Bankr. P.

Courts prior to *Strumpf* disagreed as to whether a freeze of a bank account was an impermissible setoff, an issue now settled by *Strumpf*. Some courts prior to *Strumpf* held that a bank with a setoff right violates § 362(a)(3) when it imposes an administrative freeze of a bank account containing a debtor's exempt funds. In *Patterson v. B.F. Goodrich Employees Federal Credit Union (In re Patterson)*, 967 F.2d 505, 511-12 (11th Cir. 1992), the court concluded that the broad language of § 362(a)(3) applies to administrative freezes of accounts. The court reasoned, "[t]he act of freeze deprived the [debtors] of any control over those funds and invested exclusive control in the Credit Union. Such conduct violates the express terms of Section 362(a)(3)." *See also, In re Flynn*,

16

143 B.R. 798, 801 (Bankr. D. R.I. 1992), (citation omitted)(stating that the language "or to exercise control over property of the estate," which was added by Congress in 1984, broadened the reach of the automatic stay and holding that an administrative freeze was violation of § 362(a)(3)); and *Homan v. Kemba Cincinnati Credit Union (In re Homan),* 116 B.R. 595, 20, *(*Bankr. S.D. Ohio 1990)(finding that an administrative freeze with right of setoff without seeking stay relief violates § 362(a)(3) but recognizing split of authority in freeze cases).

Wells Fargo argues that other courts have held that imposing a freeze on Plaintiff's accounts is not a stay violation under § 362(a)(3) when a freeze is intended to maintain the status quo and prevent the dissipation of the funds until the trustee gives instructions to either turn over the exempt funds to the Plaintiff or to remit the funds to the Trustee to be administered. *See In re Pimental*, 142 B.R. 26, 29 (Bankr. D. R.I. 1992)(finding that bank had not violated the stay because it was "acting in good faith to preserve the status quo, for the benefit of all creditors, pending verification as to whether the deposited funds were deemed property of the estate, or exempt property."); *In re Sousa*, 170 B.R. 492, 494 (Bankr. D. R.I. 1994)("when a bank freezes a bank account to allow time to determine the proper ownership of the funds, the bank is not exercising control. . . . Instead, the bank is 'acting in good faith to preserve the status quo, for the benefit of all creditors, pending verification as to whether the deposited funds were deemed property of the estate, or exempt property.'") (citing *Pimental*); *In re Calvin*, 329 B.R. 589, 602-03 (Bankr. S.D. Tex. 2005)(same). The *Calvin* court, which denied the debtor relief due to lack of standing, stated that even if the debtor had standing to assert a violation of the stay, the court would deny the debtor relief. *Id.* at 602. The court cited *Strumpf* and stated,

The Supreme Court has held that an administrative freeze on an account, which is a promise to

17



143 B.R. 798, 801 (Bankr. D. R.I. 1992), (citation omitted)(stating that the language "or to exercise control over property of the estate," which was added by Congress in 1984, broadened the reach of the automatic stay and holding that an administrative freeze was violation of § 362(a)(3)); and *Homan v. Kemba Cincinnati Credit Union (In re Homan),* 116 B.R. 595, 20, *(*Bankr. S.D. Ohio 1990)(finding that an administrative freeze with right of setoff without seeking stay relief violates § 362(a)(3) but recognizing split of authority in freeze cases).

Wells Fargo argues that other courts have held that imposing a freeze on Plaintiff's accounts is not a stay violation under § 362(a)(3) when a freeze is intended to maintain the status quo and prevent the dissipation of the funds until the trustee gives instructions to either turn over the exempt funds to the Plaintiff or to remit the funds to the Trustee to be administered. *See In re Pimental*, 142 B.R. 26, 29 (Bankr. D. R.I. 1992)(finding that bank had not violated the stay because it was "acting in good faith to preserve the status quo, for the benefit of all creditors, pending verification as to whether the deposited funds were deemed property of the estate, or exempt property."); *In re Sousa*, 170 B.R. 492, 494 (Bankr. D. R.I. 1994)("when a bank freezes a bank account to allow time to determine the proper ownership of the funds, the bank is not exercising control. . . . Instead, the bank is 'acting in good faith to preserve the status quo, for the benefit of all creditors, pending verification as to whether the deposited funds were deemed property of the estate, or exempt property.'") (citing *Pimental*); *In re Calvin*, 329 B.R. 589, 602-03 (Bankr. S.D. Tex. 2005)(same). The *Calvin* court, which denied the debtor relief due to lack of standing, stated that even if the debtor had standing to assert a violation of the stay, the court would deny the debtor relief. *Id.* at 602. The court cited *Strumpf* and stated,

The Supreme Court has held that an administrative freeze on an account, which is a promise to

17

pay, does not violate § 362(a)(3) **because the freeze constitutes neither a taking of property from the debtor nor an exercise of dominion over the debtor's property**. *Strumpf*, 516 U.S. at 21, 116 S.Ct. 286. Accordingly, the administrative freeze, which the Bank placed on the Debtors' account, did not violate § 362(a)(3).

*Id.* at 603 (emphasis added). Under this reasoning the court in *Calvin* concluded that pursuant to *Strumpf*, the administrative freeze on the debtors' account, which is a promise to pay, does not violate § 362(a)(3). *Id.*

This Court finds the holdings in *Calvin, Pimental* and *Sousa* unpersuasive. First, the holdings contradict the plain language of § 362(a)(3). Denying access to account funds is an exercise of control over property and violates the express language of § 362(a)(3). This Court agrees with the conclusion in *Flynn*, which was decided two months after *Pimental*,

The placing of an administrative freeze on a debtor's bank account is undeniably an act designed to "exercise control over property of the estate," and thus we conclude is an express violation of the automatic stay.

*Flynn*, 143 B.R. at 801. This Court also agrees with the *Flynn* court's characterization of a freeze:

the most fundamental problem with countenancing the freezing of the debtor's bank accounts before any judicial determination of the rights of the parties has been made is that it begs the critical question, assuming in advance the precondition for its validity . . . the freeze is essentially an extra-judicial temporary restraining order.

*Id.* (quoting *In re Wildcat Constr. Co., Inc.*, 57 B.R. 981 (Bankr. D. Va. 1986)). By denying Plaintiff access to the checking and savings account funds, Wells Fargo has expressly violated § 362(a)(3). However, Wells Fargo propounds one more argument to justify its actions and argue that it should not be held liable for violating the stay.

**A Necessary Freeze?**

Wells Fargo argues that it froze the accounts and notified the Trustee in an effort to comply with

18

the turnover provision in § 542; therefore, it should not be held liable for a stay violation. However, this justification is not necessary because, under the circumstances of this case, Wells Fargo did not need to freeze the accounts to comply with § 542.

Section 542(a) requires an entity, other than a custodian,

> in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, **shall deliver to the trustee**, and account for, such property or the value of such property, unless such property is of inconsequential value of benefit to the estate.

11 U.S.C. § 542(a)(emphasis added).

Section 542(b) provides,

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, **shall pay such debt to, or on the order of, the trustee**, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b)(emphasis added).

Wells Fargo argues that § 542(b) requires it to turnover funds in accounts because an account is a promise to pay on demand. *See Calvin*, 329 B.R. at 601 (stating that court believes that § 542(b) applies to a debtor's account funds). Regardless of whether § 542(a) or (b) applies, § 542(c) provides a safe harbor for unintentional or unknowing failure to turnover, stating "an entity that has no notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith. . ." 11 U.S.C. § 542(c). This provision provides depository banks, who are not creditors, and who would not receive court notice of a bankruptcy filing by an account holder, a safe harbor to honor checks written by account holders in

19

bankruptcy without incurring liability for turnover. *See In re Figueira*, 163 B.R. 192, 195 (Bankr. D. Kan. 1993)(finding that trustee could not recover from bank under § 542 for honoring Chapter 7 debtor's checks because bank had no notice or actual knowledge of bankruptcy).

Wells Fargo contends that the § 542(c) safe harbor is not available to it because it "received notice" of Plaintiff's bankruptcy filing via the electronic docket maintained by this Court's Clerk's Office. Wells Fargo is not a creditor and would have no reason to expect to receive notice of the bankruptcy filing from this Bankruptcy Court or from the Plaintiff. Instead, Wells Fargo states that had actual knowledge of the bankruptcy from the electronic docket system. In gaining actual knowledge with regard to Chapter 7 bankruptcy filings by account holders, Wells Fargo has removed itself from the protection of § 542(c).

> The court in *Calvin* noted that Wells Fargo had the following internal policy in which it
>
> ascertain[s] whether any individuals holding accounts at the Bank have filed for Chapter 7. Should the Bank learn of such bankruptcy filings, it places an "administrative freeze" on any account with a balance exceeding $5,000.00. The Bank takes this action so that debtors cannot withdraw the funds until the Chapter 7 trustee can assess whether the funds are exempt or nonexempt.

*Id.* at 594. Wells Fargo then sends a letter to the Chapter 7 trustee seeking direction regarding the disposition of the funds. Wells Fargo's actions in freezing Plaintiff's account were consistent with this policy. Plaintiff's accounts had balances that totaled more than $5,000.00, and Wells Fargo immediately contacted the Trustee requesting instructions as to whether these funds were exempt. Because Wells Fargo's actions in this case were identical to this stated policy, this Court can reasonably infer that Wells Fargo was following the policy outlined in *Calvin* here too. Wells Fargo is not justified by the turnover provision in freezing Plaintiff's account. Because Wells Fargo was

20

not on the list of creditors or parties to receive notice of the bankruptcy filing, Wells Fargo would not have gained actual knowledge of the filing had it not searched the electronic docket system for filings by account holders. Therefore, it would have been protected by the safe haven of § 542(c) and would not be liable to the Trustee or the debtor for allowing the funds to remain available to Plaintiff making the administrative freeze unnecessary.

While it is true that Wells Fargo must comply with the turnover provision if it acquires actual knowledge of the bankruptcy, in this case did not need to freeze the accounts to protect itself, because it is not a creditor and it would have been was protected by § 542(c). Wells Fargo appears to be using a disingenuous sense of obligation put into place by its policy of seeking out knowledge of bankruptcy filings by its account holders to justify the freezing of accounts. The Court wonders if Wells Fargo had really intended to follow § 542(b), why it did not close the accounts and transfer the funds immediately to the Trustee? Instead, Wells Fargo created an obligation to freeze the funds and in the mean time, presumably, earn interest on those funds.

Wells Fargo has expressly and wilfully violated the stay provision of § 362(a)(3), and is not excused by its policy ostensibly created to comply with the turnover provisions. The Plaintiff's Cross Motion will be granted and Wells Fargo's Motion will be denied. The Court will set a hearing on damages, including punitive damages, if warranted.[12]

---

[12] Wells Fargo is a sophisticated participant in the banking industry, which is relevant to a finding that punitive damages are warranted. *Cullen*, 329 B.R. at 58.

An order and judgment will be entered in accordance with this Memorandum Opinion, which

constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052, Fed. R. Bankr. P.

_____
MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

I certify that on the date shown on the attached
document verification, a true and correct copy of
the foregoing was either electronically transmitted,
faxed, delivered or mailed to the listed counsel
and/or parties.

Michael K. Daniels
Attorney for Plaintiff
P.O. Box 1640
Albuquerque, NM 87103

James L. Rasmussen
Attorney for Wells Fargo
P.O. Box. AA
Albuquerque, NM 87103

Ellen C. Snyder
Law Clerk

22